STEVEN L. FRIEDLANDER (SBN 154146)
JULIAN PARDO DE ZELA (SBN 246496)
GALEN P. SALLOMI (SBN 306743)
SV EMPLOYMENT LAW FIRM PC
160 Bovet Road, Suite 401
San Mateo, CA  94402
Telephone:    (650) 265-0222
Facsimile:    (650) 265-0223
Email:        sfriedlander@svelf.com
              julian.pardo.de.zela@svelf.com
              gsallomi@svelf.com

RICHARD A. GRIMM (SBN 177463)
LAW OFFICE OF RICHARD GRIMM
2391 The Alameda, Suite 200
Santa Clara, CA 95050
Telephone     (650) 248-5487
Facsimile     (650) 618-9856
Email:        richard@richardgrimm.com

Attorneys for Plaintiff JEFFREY SANTELICES

r

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY SANTELICES,<br><br>Plaintiff,<br><br>vs.<br><br>APTTUS CORPORATION; PROJECT EVEREST PARENT, LLC; PROJECT EVEREST HOLDINGS, LLC; and DOES 1 through 50,<br><br>Defendants. | Case No. 4:19-cv-07414-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:  January 30, 2020<br>Time:  2:00 pm<br>Dept:  Courtroom 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr.<br><br>Notice of Removal Filed:  November 8, 2019 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (1937) ................................................................................................3

*Atherton v. F.D.I.C.*,
    519 U.S. 213 (1997) ................................................................................................4

*In re Atmel Corp. Derivative Litig.*,
    2008 U.S. Dist. LEXIS 91909 (N.D. Cal. June 25, 2008) ......................................11

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................3

*Bertero v. National General Corp.*,
    254 Cal.App.2d 126 (1967) ...................................................................................16

*Burris v. Cross*,
    583 A.2d 1364 (Del. Super. Ct. 1990) ...................................................................16

*Celador International v. The Walt Disney Co.*
    347 F.Supp.2d 846 (2004) ......................................................................................13

*EBP Lifestyle Brands Holdings, Inc. v. Boulbain*,
    2017 WL 3328363 (Del. Ch. 2017) .........................................................................5

*Falkowski v. Imation Corp.*,
    309 F.3d 1123 (9th Cir. 2002) ...............................................................................14

*Friese v. Super. Ct.*,
    134 Cal. App. 4th 693 (2005) ..........................................................................3, 4, 7

*Gas & Electric Co. v. BearStearns & Co.*,
    50 Cal.3d 1118 (1990) .............................................................................................8

*Gulaid v. Ch2m Hill, Inc.*,
    2016 WL 926974 (N.D.Cal. 2016) .........................................................................13

*Guz v. Bechtel Nat'l, Inc.*,
    24 Cal.4th 317 (2000) .............................................................................................13

*Johnson v. Myers*,
    2011 WL 4533198 (N.D. Cal. 2011) .......................................................................4

*Lamke v. Sunstate Equipment Co., LLC*,
    2004 WL 2125869 (N.D.Cal. 2004) .......................................................................13

II

## TABLE OF AUTHORITIES (CTD)

*Lidow v. Superior Court*,
  206 Cal. App. 4th 351 (2012) ................................................................7

*May v. Semblant, Inc*.
  2013 WL 5423614 (N.D. Cal. 2013) .....................................................11

*In Re McKesson Corporation Derivative Litigation*,
  2018 WL 2197548 (N.D. Cal. 2018) .......................................................3

*In re Maxim Integrated Prods, Inc*,
  574 F. Supp. 2d 1046 (N.D. Cal. 2008) ..................................................4

*Melchior v. New Line Productions, Inc.*,
  106 Cal.App.4th 779 (2003) ....................................................................9

*NHL Players' Ass'n v. Plymouth Whalers Hockey Club*,
  166 F. Supp. 2d 1155 (D. Mi. 2001) .......................................................6

*Nikolouzakis v. Exinda Corp.*
  2012 WL 3239853 (D. Del. 2012) ..........................................................12

*KBR Inc. v. Blount*,
  106 F. Supp. 3d 833 (S.D. Tex. 2015) .....................................................6

*Ott v. Fred Alger Mgmt, Inc.*,
  2012 WL 4767200 (S.D.N.Y. 2012) .......................................................12

*People v. Jackson*,
  24 Cal.App.2d 182 (1937) .....................................................................14

*Perry Cap. LLC v. Lew*,
  70 F.Supp.3d 208 (D.D.C. 2014) ...........................................................12

*In re Sagent Tech., Inc., Derivative Litig.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...................................................7

*Sheridan v. NGK Metals Corp.*,
  609 F.3d 239 (3d Cir.2010)......................................................................3

*Solow v. Aspect Res., LLC*,
  2004 WL 2694916 (Del. Ch. 2004) ........................................................10

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (2018)...............................................................................6

*Tendyne Holdings, Inc. Securityholder's Representative Committee v. Abbott Vascular, Inc. et al.*,
  2019 WL 2717857 (D.Del. 2019) ..........................................................11

## <u>TABLE OF AUTHORITIES (CTD)</u>

*In re Verisign, Inc.*
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................................................4

*VLJW Tech., LLC v. Hewlett-Packard Co.*,
   840 A.2d 606 (Del. 2003) ........................................................................11

*West v. JPMorgan Chase Bank, N.A.*,
   214 Cal.App.4th 780 (2013) ...............................................................10, 15

**Statutes**

Cal. Corp. Code § 500-505, 1001, 1101, 1201, 2115 ...............................................3

Cal. Corp. Code § 2115..............................................................................3

Cal. Corp. Code § 25000.............................................................................7

Cal. Corp. Code § 25017............................................................................13

Cal. Corp. Code § 25019............................................................................14

Cal. Corp. Code § 25110.........................................................................9, 13

**Other Authorities**

CACI No. 2201.......................................................................................8

Federal Rules of Civivil Procedure 12.............................................................1, 2

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

1
2

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..............................................................................................1

II.    LEGAL STANDARD.........................................................................................2

III.   ARGUMENT .....................................................................................................3

     A.    The Internal Affairs Doctrine Does Not Support Dismissal Of Plaintiff's
          Claims .................................................................................................................3

          1.    California State And Federal Courts Have Concluded That A
               Defendant Cannot Avoid California Securities Laws By Invoking
               The Internal Affairs Doctrine......................................................................3

          2.    The Internal Affairs Doctrine Does Not Require Adjudication In
               The State Of Incorporation .........................................................................4

     B.    Unreasonable Forum Selection Clauses Are Unenforceable ...................................5

          1.    The Forum Selection Clause Was Not "Bargained For" and
               Plaintiff Did Not Assent to the Delaware Forum.........................................5

          2.    The Forum Selection Clause Would Deprive Plaintiff Of His Day
               In Court ......................................................................................................5

          3.    The Delaware Chancery Court Is Not An Adequate Alternative
               Forum .........................................................................................................6

     C.    The Everest Defendants Are Necessary Defendants in This Litigation and
          Should Not Be Dismissed. ..................................................................................7

          1.    The Everest Defendants Stepped into the Contracts...................................8

          2.    The Everest Defendants Offered Unqualified Securities............................9

          3.    The Everest Defendants Made Their Own Promises..................................9

          4.    The Everest Defendants' Own Securities Would Be Affected by
               the Requested Declaratory Judgment.......................................................10

     D.    Plaintiff Sufficiently Pleads A Breach Of Contract Cause Of Action. .................11

     E.    Plaintiff Sufficiently Pleads A Cause Of Action For Breach Of The
          Implied Covenant In The Stock Plan And Stock Option Agreement. ...................13

     F.    Plaintiff Has Standing To Plead A Securities Law Cause Of Action
          Because Defendants "Sold" Or "Offered" Securities As Defined By
          California Statute. ...............................................................................................13

     G.    Plaintiff Adequately Alleges A Cause of Action for Promissory Estoppel ...........15

     H.    Plaintiff Adequately Alleges A Cause of Action for Declaratory Judgment.........15

IV.    CONCLUSION................................................................................................16

1

2

## I.     INTRODUCTION

Defendants Apttus Corporation, Project Everest Parent, LLC, and Project Everest Holdings, LLC ("Defendants") have moved to dismiss Plaintiff Jeffrey Santelices' ("Plaintiff") First Amended Complaint on the basis of *forum non conveniens*, and a failure to state a claim pursuant to Fed.R.Civ.P. 12(B)(6). There is no reason for this Court to address the Motion to Dismiss, which will be rendered moot if this Court grants Plaintiff's pending Motion for Leave to File Second Amended Complaint and Motion to Remand.[1] If this Court does choose to rule on Defendants' Motion to Dismiss at this time, it should permit Plaintiff's claim to be decided on its merits, not on the meritless pleading technicalities raised by Defendants.

The Motion to Dismiss argues that because Defendants are Delaware corporations, the internal affairs doctrine "requires" Plaintiff Jeffrey Santelices to litigate his First through Fourth, and Seventh Causes of Action, in the Delaware Court of Chancery pursuant to a forum selection clause contained in the Certificate of Incorporation for Defendant Apttus Corporation. This is contrary to applicable law. The Northern District of California has acknowledged that the "internal affairs" doctrine should not be invoked to permit a foreign corporation to avoid California securities regulations concerning the treatment of stock. Here, this case does not even implicate Defendants' internal affairs, but rather the terms of employment between Apttus and Plaintiff, and how those terms were violated by Defendants. The internal affairs doctrine is simply inapplicable.

There are additional reasons to deny Defendants' Motion to Dismiss. The forum selection clause should not be enforced because: (1) the Delaware Court of Chancery is not an adequate alternative forum for Plaintiff's California State law claims; (2) Plaintiff was not a signatory to Apttus' Certificate of Incorporation and the inclusion of the forum selection clause was the result of "overreaching"; and (3)

---

[1] On December 9, 2019, Plaintiff filed a Motion for Leave to File Second Amended Complaint (dkt. 25) and Motion to Remand (dkt. 24). The Motion for Leave is to permit Plaintiff to clarify that none of his causes of action rely on federal securities law, which is the sole basis asserted by Defendants for removal of this action to federal court. The Motion to Remand is based on the fact that amendment of the complaint will eliminate any basis for federal subject matter jurisdiction. Defendants' Motion to Dismiss (dkt. 19) will be rendered moot if this Court grants Mr. Santelices' Motion for Leave to File Second Amended Complaint, or Motion to Remand. Indeed, the Motion to Remand will determine the court that ought to decide the Motion to Dismiss. Accordingly, in order to conserve judicial and party resources, Plaintiff respectfully requests that this Court address Plaintiff's Motion for Leave to File Second Amended Complaint, and Motion to Remand, prior to ruling on Defendants' Motion to Dismiss.

1

public interest factors, including the local interest in having localized controversies decided at home, weigh against enforcement of the forum selection clause.

Furthermore, unreasonable forum selection clauses are unenforceable. Plaintiff would effectively be deprived of his day in court if the forum selection clause were enforced because the Delaware Chancery Court lacks jurisdiction over Plaintiff's state law claims, including his third cause of action for violation of California Securities Law. The Delaware Chancery Court is a court of equity, not law, and therefore cannot provide Plaintiff with certain rights he would have in federal court or California State court, including his right to a jury trial, among other things. The Delaware Chancery Court's subpoena power is far more limited than is the power of this Court.

Plaintiff's First Amended Complaint meets all pleading requirements. Plaintiff sufficiently pleads a cause of action for breach of contract and breach of the implied covenant in the Stock Plan and Stock Option Agreement. Plaintiff alleges the benefits of the Stock Plan (the value of the post-transaction equity) were impaired, diluted, and reduced by Apttus' "bad faith" conduct that included misrepresenting the terms of the merger and how it would adversely affect the new equity. This conduct was deliberate, in bad faith, and frustrated the benefits of the Stock Plan. These allegations are independent of Plaintiff's breach of contract cause of action, and not "duplicative." Although Defendants cite a number of cases for the proposition that Plaintiff did not plead his pre-conversion equity was "impaired" or that he suffered conversion, these cases are easily distinguishable because they involved verbal promises, failures to allege any breach, or awards of equity that were purely discretionary and speculative. Defendants Project Everest Parent, LLC, and Project Everest Holdings, LLC are proper parties to this action because they "sold" or "offered" securities, and stepped into the contracts at issue by agreeing to assume Plaintiff's outstanding options.

Accordingly, and as set forth in further detail below, the Motion to Dismiss should be denied.

## II.     LEGAL STANDARD

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell*

2

*Atlantic v. Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. at 678 (1937) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n. 27 (3d Cir.2010).

## III.    ARGUMENT

### A.    The Internal Affairs Doctrine Does Not Support Dismissal Of Plaintiff's Claims

#### 1.    California State And Federal Courts Have Concluded That A Defendant Cannot Avoid California Securities Laws By Invoking The Internal Affairs Doctrine

California has adopted the "internal affairs doctrine," under which a court will apply the law of the state of incorporation to certain conduct constituting the "internal affairs" of the corporation. However, this case is *not* about Defendants' internal affairs. Rather, it arises from the terms of employment between Apttus and a single employee, Plaintiff, and how those terms were violated by Defendants. The internal affairs doctrine is simply inapplicable.

Section 2115 of the California Corporations Code expressly states that in most instances a foreign corporation is subject to California securities regulations limiting corporate distributions of cash, property or assets, restricting mergers, and limiting reorganizations. Cal. Corp. Code § 500-505, 1001, 1101, 1201, 2115.  These regulations "**shall apply to a foreign corporation…to the exclusion of the law of the jurisdiction in which it in incorporated**." Cal. Corp. Code § 2115(b). In *Friese v. Super. Ct*., 134 Cal. App. 4th 693, 706 (2005), the California Court of Appeal explained these regulations exhibited the California Legislature's "historic and well established intent to regulate both intrastate conduct and . . . subject securities transactions which take place in this state to California's securities laws even if those securities are issued by foreign corporations." *Friese*, 134 Cal. App. 4th at 709. It thus concluded that because these laws served both "the public and regulatory interests," they could not be displaced by the internal affairs doctrine. *Id*. at 710.

Federal courts have adopted this reasoning. See *In Re McKesson Corporation Derivative Litigation*, Case No. 17-cv-01850-CW (N.D. Cal. May 14, 2018) ("This Court follows the decision in

3

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

*Friese* and denies Defendants' motion to dismiss the insider trading claims under California law pursuant to the internal affairs doctrine"; see also *In re Maxim Integrated Prods, Inc.*, Derivative Litig., 574 F. Supp. 2d 1046, 1070 (N.D. Cal. 2008) (stating in a derivative action that "plaintiff may bring a California insider trading claim against individuals who traded on insider information in California even if the corporation is incorporated in Delaware"); *In re Verisign, Inc.*, Derivative Litig., 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007) (concluding, in a derivative action, pursuant to *Friese* "that the claims brought under §§ 25402 and 25403 are not barred by application of California's internal affairs doctrine"). The Northern District of California has specifically acknowledged that the internal affairs doctrine should not be invoked to permit a foreign corporation to avoid California securities regulations concerning the treatment of stock. See *Johnson v. Myers*, No. CV-11-00092 JF, (N.D. Cal. 2011)

### 2.  The Internal Affairs Doctrine Does Not Require Adjudication In The State Of Incorporation

The internal affairs doctrine is a choice of law doctrine, not a choice of forum doctrine. It recognizes that while claims involving the "internal affairs" of a corporation may be *subject to* the laws of the state of incorporation, this does not require *adjudication* of such claims in the state of incorporation. *See, e.g., Atherton v. F.D.I.C.,* 519 U.S. 213, 223-24 (1997) (recognizing that the "internal affairs doctrine" is a conflict of laws principle that recognizes that the state of incorporation should have the authority to regulate a corporation's internal affairs and noting that other "[s]tates normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care"). Courts outside of Delaware often litigate issues involving a Delaware corporation's internal affairs. *See, e.g.,* John Amour, *et al., Delaware's Balancing Act,* 87 Ind. L.J. 1345, 1350 (2012) (discussing the trend of cases involving the internal affairs of Delaware corporations being litigated in venues outside of Delaware, stating "[n]evertheless, our research shows that the vast majority of option backdating suits involving Delaware companies were filed outside Delaware.... The loss of potentially important cases appears to generalize beyond options backdating. For example, in our empirical research, we also studied cases that give rise to publicly distributed opinions-the ones that generate precedents. Delaware is losing market share for these cases as well").

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

**B.     Unreasonable Forum Selection Clauses Are Unenforceable**

The Ninth Circuit has established three reasons that would make enforcement of a forum selection clause unreasonable and, thus, unenforceable: "(1) if the inclusion of the clause in the agreement was the product of overreaching; (2) "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; and (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." *Tech. Credit Corp.*, 2018 WL 1863358, *8 (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).

### 1.     The Forum Selection Clause Was Not "Bargained For" and Plaintiff Did Not Assent to the Delaware Forum

In *Technology Credit Corporation* 307 F.Supp.3d 993 (2018), the federal court, Northern District, concluded that a forum selection clause was not enforceable because the individual against whom enforcement was sought had not signed the agreement containing the clause, explaining, "defendants have not cited authority addressing the circumstances presented here—where one side seeks to enforce a forum selection clause in a contract (not at issue) against a non-signatory who seeks to enforce a competing forum selection clause in a different contract that is at issue."). 2018 WL 1863358 at *13. Here, as in *Technology Credit Corporation*, Plaintiff was not a signatory to the Certificate of Incorporation. Further, given that Defendants have not argued that this District is an improper venue, or an inconvenient forum – it is not – the Court should not dismiss this action on the basis of the forum selection clause.

### 2.     The Forum Selection Clause Would Deprive Plaintiff Of His Day In Court

Plaintiff would effectively be deprived of his day in court if the purported forum selection clause in Apttus' Certificate of Incorporation is enforced, because the Delaware Chancery Court cannot hear and/or rule on Plaintiff's California State law claims, including his third cause of action for violation of California Securities Law. As a result, if this Court dismisses this action on the grounds that Plaintiff must bring this action in Delaware Chancery Court, Plaintiff will be forced to forgo his claims for alleged violations of the securities laws. See *EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *4 (Del. Ch. Aug. 4, 2017) (Delaware Chancery Court cannot exercise personal jurisdiction

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

over a Delaware corporation's employee (and resident of California) because the employee/defendant had "done nothing to invoke Delaware law or to avail himself of its protections.").

Where, as here, the alternative forum set forth in the forum selection clause would provide plaintiff with no remedy, the forum selection clause is not enforceable. As explained in *NHL Players' Ass'n v. Plymouth Whalers Hockey Club*, 166 F. Supp. 2d 1155, *1159 (D. Mi. 2001), at the outset of any forum non conveniens inquiry, the court must determine whether an alternative forum exists. Where the remedy offered by the alternative forum is unsatisfactory or fails to exist, the other forum is not an adequate alternative. *Id*. See also *Sun v. Advanced China Healthcare, Inc*., 901 F.3d 1081, 1092 (2018) (explaining that a forum selection clause generally must be enforced except where it would provide plaintiff with no remedy at all, citing *Weber v. PACT XPP Techs*., AG, 811 F.3d 758, 774 (5th Cir. 2016)).

Alternatively, enforcing the forum-selection clause would require dividing this case between two courts, resulting in additional costs not only to Plaintiff but also to Defendants, witnesses, and the courts. Faced with a similar prospect, at least one federal court has said it could "think of no worse use of judicial resources than severing and staying one portion of this case so that the other related claims can be brought in Delaware state court." *Butorin on behalf of KBR Inc. v. Blount*, 106 F. Supp. 3d 833, 837-38 (S.D. Tex. 2015)

### 3.    The Delaware Chancery Court Is Not An Adequate Alternative Forum

The Delaware Chancery Court is not a suitable alternative forum that would provide Plaintiff with his day in court.

*First*, the Delaware Chancery Court is a court of equity, not law, and therefore cannot provide Plaintiff with certain rights he would have in federal court or California State court, including his right to a jury trial, among other things.

*Second,* the Delaware Chancery Court's subpoena power is far more limited than is the power of this Court, i.e. the Chancery Court can only issue subpoenas for witnesses within the State. Plaintiff anticipates that no witnesses will be located in Delaware; rather, witnesses will be in the County of San Mateo where Apttus is headquartered.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

*Third*, Plaintiff pleads claims for violations of California Securities Laws, over which a California court has far more interest and expertise than the Delaware Chancery Court. That is particularly true since California Corporations Code sections 25000, et. seq., only apply to sales of securities in California. A Delaware court thus would have little interest in applying this statute. Both state and federal courts in this jurisdiction have repeatedly held that California's interest in enforcing its state securities laws supersedes Delaware's interest in overseeing the general internal governance of Delaware incorporated companies where insider trading has occurred in California. See, e.g., *Friese v. Superior Court*, 134 Cal. App. 4th 693, *704-709 (Ct. App. Cal. 2005) (explaining that California's state securities regulations are part of an overall scheme supplementing the federal securities laws and have broad implications of statewide interest such that enforcing them does not conflict with the internal affairs of a foreign corporation and distinguishing among other cases); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003); *Lidow v. Superior Court*, 206 Cal. App. 4th 351, *362 (Ct. App. Cal. 2012) (discussing *Friese*, among other cases, and explaining that California "courts are less apt to apply the internal affairs doctrine when vital statewide interests are at stake, such as maintaining the integrity of California security markets and protecting its citizens from harmful conduct").

**C.    The Everest Defendants Are Necessary Defendants in This Litigation and Should Not Be Dismissed.**

Defendants argue that all claims against Project Everest Parent, LLC and Project Everest Holdings, LLC (the "Everest Defendants") should be dismissed because Plaintiff only alleges "scattered conclusory references to all Defendants" but does not "differentiate between" the Everest Defendants and Apttus.  Mot. at 9-12.  This is factually inaccurate and reflects a misunderstanding of the actual and alleged structure and effects of the Merger as alleged in the Complaint.

In the operative Complaint, Plaintiff alleges that the Everest Defendants participated in a conspiracy to use the Merger to take the value of Plaintiff's equity by modifying his outstanding options so they no longer entitle him to receive Common Stock in Apttus, as he had been promised, but instead entitle him to receive less valuable Class C Units in Project Everest Parent, LLC.  Complaint at ¶ 4, 46. All defendants, including the Everest Defendants, attempted to hide this modification and "materially misrepresented to Plaintiff that the transaction would not adversely affect" these outstanding options.  *Id.*

7

at ¶ 6.  All defendants entered into a merger agreement that was provided to Plaintiff and provided, *inter alia*, Plaintiff's options "shall continue to have and be subject to substantially the same terms and conditions as were applicable" before the merger.  *Id.* at ¶ 70-72.  Finally, Project Everest Parent LLC assumed Plaintiff's outstanding options and issued "newly created Class C Units" that "are materially inferior in value to Apttus' common stock."  *Id.* at ¶ 4.

None of defendants' arguments or cited cases address the allegations that the Everest Defendants engaged in the misconduct described above and in the First Amended Complaint.  Each of defendants' arguments that this Court should dismiss the Everest Defendants is based on the fundamentally incorrect premise that the Complaint does not make specific allegations about the Everest Defendants.  Thus, none of these arguments addresses a situation like this one, where the named defendants agreed to assume outstanding options, decided to issue inferior equity and made material misrepresentations about this.  Accordingly, each argument fails.

### 1.    The Everest Defendants Stepped into the Contracts.

Defendants argue that the first and second causes of action—for breach of contract and implied covenant of good faith and fair dealing, respectively—should be dismissed against the Everest Defendants because "they are not parties to the contracts underlying" these causes of action.  Mot. at 9.  However, the Everest Defendants should be liable for these claims as a matter of law because they stepped into the contracts when they signed the Merger Agreement and agreed to assume Plaintiff's outstanding options.  *See* Complaint at ¶¶ 4, 46-51.  Further, to the extent this Court finds that the Everest Defendants are not liable for these causes of action as a matter of law, then Plaintiff respectfully requests leave to add a cause of action for intentional interference with contractual relations.  *See* CACI No. 2201; *Pacific Gas & Electric Co. v. BearStearns & Co.,* 50 Cal.3d 1118 (1990).

The Everest Defendants and Apttus agreed in the Merger Agreement that the underlying contracts (specifically the outstanding options) would entitle Plaintiff to receive Class C Units in Project Everest Parent, LLC rather than Common Stock in Apttus.  Complaint at ¶ 4.  Accordingly, Project Everest Parent, LLC assumed Apttus' obligation to issue equity that satisfied the terms of Plaintiff's outstanding options and associated agreements.  Project Everest Parent, LLC accepted the benefits from these

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

contracts and should therefore be held responsible for fulfilling the associated obligations. *See generally Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779 (2003) (a third-party defendant can be held liable as a matter of law for breaching a contract when it accepts the benefits of a contract and refuses to fulfil the obligations).

Further, Plaintiff alleges that the Everest Defendants breached the terms of these contracts by providing securities that were substantially inferior to what had been promised to Plaintiff, primarily because they included a substantial and increasing liquidation preference.

### 2.    The Everest Defendants Offered Unqualified Securities.

Defendants incorrectly argue that the third cause of action—for violations of California securities laws—should be dismissed against the Everest Defendants because Plaintiff "does not specifically allege that the Everest Defendants sold securities of any kind to Plaintiff." Mot. At 10.  However, the Complaint alleges that the Everest Defendants made material misrepresentations and agreed, in the Merger Agreement, to "assume outstanding options" and issue "newly created Class C units."  Complaint at ¶ 4.  Because Plaintiff alleged that the Everest Defendants offered securities (specifically Class C Units) to Plaintiff, Defendants' argument is factually incorrect and should be disregarded.

The cases cited by defendants do not support their positions.  Neither *Levine v. Diamanthuset* nor *Dietrich v. Bauer* concerns a situation, as here, where the defendant agreed to issue securities in satisfaction of previously issued options.  The applicable statute prevents a party from offering or selling securities not qualified under the Act or exempt from Chapter 1 of Part 2 of the Act.  Cal. Corp. Code § 25110.  The Everest Defendants violated this act by issuing unqualified securities (*i.e.* Class C Units) and by making material misrepresentations about them, including by agreeing in the Merger Agreement that such securities would "continue to have and be subject to substantially the same terms and conditions as were applicable" to such securities as existed before the Merger.  Complaint at ¶ 46.  Because Project Everest Parent LLC offered Class C Units to Plaintiff, and because the Everest Defendants made material misrepresentations in connection with such offering, they are liable for the third cause of action.

### 3.    The Everest Defendants Made Their Own Promises.

Defendants' argument that the fourth cause of action—for promissory estoppel—should be

9

dismissed against the Everest Defendants is similar to their arguments regarding the first and second causes of action— for breach of contract and implied covenant of good faith and fair dealing, respectively.  It fails for the same reason, the Everest Defendants stepped into the contracts and associated promises when they signed the Merger Agreement and agreed to assume Plaintiff's outstanding options.  *See* Complaint at ¶ ¶ 4, 46-51.  It also fails because the complaint alleges that the Everest Defendants made a number of promises on their own, including in connection with the merger, *i.e.* that the post-merger securities "shall continue to have and be subject to substantially the same terms and conditions as were applicable" before the merger.  *Id.* at ¶ 70-72.

Plaintiff relied on these promises in two ways.  First by seeking, accepting and continuing his employment at Apttus.  Complaint at ¶ 3.  Second, by choosing not to engage in remedial actions that could have protected his interests.  *See, e.g.*, *West v. JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th 780, 805 (2013) (finding a detrimental reliance where plaintiff forewent potential remedial actions because of defendant's promises).  For example, if Defendants had not repeatedly promised that they would not impair the value of Plaintiff's options, then he could have negotiated for a smaller percentage of his compensation to be in such options, sought to sell or transfer his options to a third party, or timely filed a class action lawsuit challenging the Merger on the grounds that it would impair the equity that Defendants had provided to all Apttus employees.  None of these actions were possible because Defendants repeatedly lied about, and failed to disclose, the effect of the Merger.

### 4.    The Everest Defendants' Own Securities Would Be Affected by the Requested Declaratory Judgment

The seventh cause of action seeks a declaration that the Class C Units do not have substantially same terms and conditions as the Common Stock.  Complaint at ¶ ¶ 128-134.  Class C Units were issued by Project Everest Parent, LLC.  Complaint at ¶ 4.  Accordingly, the declaratory judgment action seeks a declaration as to the legal rights and duties regarding securities issued by the Everest Defendants. The Everest Defendants are, accordingly, necessary parties to the seventh cause of action.  The case cited by defendants, *Solow v. Aspect Resources, LLC*, is not helpful in this case as it involves allegations that the management company "dominated and controlled" the defendant's actions, not that the management company issued securities that were at the heart of the requested declaratory judgment.  *Solow v. Aspect*

10

1   *Res., LLC*, No. Civ. A 20397, 2004 WL 2694916, at *4 (Del. Ch. Oct. 19, 2004).

2   **D.       Plaintiff Sufficiently Pleads A Breach Of Contract Cause Of Action.**

3              To state a claim for breach of contract under Delaware law, a plaintiff must allege facts sufficient

4   to enable a defendant to plausibly infer: (1) the existence of a contractual obligation; (2) a breach of that

5   obligation by the defendant; and (3) resulting damage to the plaintiff. *VLJW Tech., LLC v. Hewlett-*

6   *Packard Co*., 840 A.2d 606, 612 (Del. 2003). This does not impose the heightened pleading standard

7   suggested by Defendants. For example, in *In re Atmel Corp. Derivative Litig*., No. C 06-4592 JF (HRL),

8   2008 U.S. Dist. LEXIS 91909 (N.D. Cal. June 25, 2008), Judge Fogel upheld breach of contract claims

9   with respect to claims of backdating: "Plaintiffs have alleged that when Defendants . . . received

10  backdated stock [options] these Defendants entered into invalid contracts with Atmel. Plaintiffs also state

11  that because the options were backdated, they contained incorrect grant dates and improper exercise

12  prices, which violated the terms of the Plans. These allegations are sufficient to state a claim for breach

13  of contract. *Atmel*, 2008 U.S. Dist. LEXIS 91909, at *38-*39.

14             Defendants cite a number of cases for the proposition that Plaintiff did not plead his pre-

15  conversion equity was "impaired" or that he suffered conversion. (Mot. 12:9-14:24) As set forth below,

16  these cases are easily distinguishable because they involved *verbal* promises, failures to allege *any*

17  breach, or awards of equity that were purely discretionary and speculative.

18             In *May v. Semblant, Inc*. No.: 5:13-CV-01576-EJD (N.D. Cal. Sep. 27, 2013), the federal district

19  court dismissed a claim for breach of contract because the complaint failed to identify or describe the

20  terms of the "verbal promises" at issue. ("Simply alleging that [defendant] did not honor or did not intend

21  to honor the terms of the agreement is not enough to state a claim for breach of contract without

22  describing which terms were not honored and in what way.") (*May,* 10) Here, Plaintiff has clearly

23  identified the terms of the agreement, and the breach: a Stock Plan promised Plaintiff he "would receive

24  equity compensation" pursuant to terms that included "no modification of an Option shall, without the

25  consent of the Optionee, impair the Optionee's rights or increase the Optionee's obligations," but that

26  Defendants switched this equity for materially inferior shares. FAC, 5:22-6:8.

27             Defendants also cite *Tendyne Holdings, Inc. Securityholder's Representative Committee v. Abbott*

28  *Vascular, Inc. et al*., No. 18-1070-CFC (D.Del.June 28, 2019), where the complaint contained a single

11

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

1   cause of action for breach of a merger agreement, but the plaintiff failed in any way to identify or

2   describe the "commercially reasonable efforts" that it claimed defendants had breached under the

3   agreement. Here, Plaintiff has pleaded an exhaustive list of Defendants' breaches. *See* FAC, 12:11-17;

4   14:10-17:7.

5          Defendants cite *Ott v. Fred Alger Mgmt, Inc.*, No. 11 Civ. 4418 LAP, 2012 WL 4767200

6   (S.D.N.Y. Sept 27, 2012) for the proposition that dismissal was proper for a claim for "unvested deferred

7   compensation" that was deemed to be "too speculative." (Mot. Dismiss, *13) *Ott* is a New York case that

8   is easily distinguishable. The "unvested deferred compensation" at issue consisted of *discretionary*

9   bonuses. (*Ott*, *14) Under New York law, an employee has no right to a bonus "where the plan vests the

10  employer with absolute discretion as to the entitlement and amount of any payments thereunder." (*Ott*,

11  *13) Accordingly, any damages pleaded were necessarily speculative. Here, Plaintiff has pleaded that he

12  was entitled to Common Shares, but these were switched out for "newly created Class C units [that] are

13  materially inferior in value to Apttus' common stock as they are subordinate to other classes of Buyer

14  units that provide for a guaranteed annual return which increases at a substantial annual rate." FAC 2:25-

15  28.

16         Defendants paraphrase a passage from *Perry Cap. LLC v. Lew*, 70 F.Supp. 3d 208 (D.D.C. 2014)

17  for the proposition that a claim should be dismissed where it only alleges a diminished *opportunity* to the

18  value of liquidation preferences. Mot. 13:17-21. In *Perry*, the liquidation preference was only triggered

19  when the company's assets were dissolved, and so the claim was not ripe because that dissolution had not

20  yet occurred. *Perry*, 235. Here, Plaintiff has pleaded the merger occurred, and that he was injured by that

21  merger. FAC 10:19-11:2.

22         Defendants cite *Nikolouzakis v. Exinda Corp.* C. A. No. 11-1261-LPS-MPT (D. Del. Aug. 7,

23  2012), which in fact supports Plaintiff's position. While the district court did not consider a motion to

24  dismiss a breach of contract cause of action, it did *deny* a motion to dismiss a cause of action for

25  intentional interference with prospective economic advantage, finding the alleged "intentional

26  termination" of options which resulted in "drastic financial harm" constituted a sufficient pleading of

27  harm to survive a motion to dismiss.

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

**E.    Plaintiff Sufficiently Pleads A Cause Of Action For Breach Of The Implied Covenant In The Stock Plan And Stock Option Agreement.**

A cause of action for breach of the implied covenant of good faith and fair dealing must include an allegation of a deliberate act that frustrates the expectations of a party to a contract, which is an additional pleading requirement not required to assert a breach of contract cause of action. *Celador International v. The Walt Disney Co.* 347 F.Supp.2d 846, 852 (2004). Where as here the plaintiff alleges that the defendant acted in bad faith to frustrate the *benefits* of a contract, a cause of action for breach of the implied covenant should not be dismissed as "duplicative." *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317 (2000); *Lamke v. Sunstate Equipment Co., LLC,* No. C-03-4956, 2004 WL 2125869 (N.D.Cal. Sept.22, 2004) (applying California law).

Here, Plaintiff alleges the *benefit*s of the Stock Plan (the value of the post-transaction equity) was impaired, diluted, and reduced by Apttus' "bad faith" conduct that included misrepresenting the terms of the merger and how it would adversely affect the new equity. FAC 16:22-24; FAC 18:4-10. This conduct was deliberate, in bad faith, and frustrated the benefits of the Stock Plan. These allegations are independent of Plaintiff's breach of contract cause of action, and not "duplicative": the cause of action for breach of contract does not rely (nor does it require) either "bad faith" or a showing that a contract's benefits were deliberately frustrated. FAC 15:1-17:7; *Gulaid v. Ch2m Hill, Inc*., No. 15-cv-04824-JST (N.D.Cal. March 10, 2016)

**F.    Plaintiff Has Standing To Plead A Securities Law Cause Of Action Because Defendants "Sold" Or "Offered" Securities As Defined By California Statute.**

Defendants argue that the third cause of action—for violations of California Securities Law—should be dismissed because Plaintiff "was not offered or sold a security" in connection with the Merger and therefore "does not have standing to allege a claim under Section 25110." Mot. at 17-18.  This argument is fundamentally flawed for three reasons.

*First*, Defendants' attempt to create their own definition of "offer or sale" is improper because the terms "offer" and "sale" ***are already defined*** under California law.  Specifically, the term "Sale" is defined to include "any exchange of securities and any change in the rights, preferences, privileges, or restrictions of or on outstanding securities."  Cal. Corp. Code § 25017.  While the Court can turn to

13

federal law to assist its interpretation of California securities laws, as Defendants argue, the starting point must be California securities laws. Nevertheless, the motion does not even mention this statutory definition. It is not necessary to rely on an unpublished opinion from New Jersey that does not mention California Securities law because this statutory definition is straightforward and includes the conduct at issue in this case.

Plaintiff alleged that Defendants, including the Everest Defendants, changed the rights, preferences, privileges and restrictions of his outstanding options when they entered into the Merger Agreement. Complaint *passim*. Specifically, the Class C Units are subject to and impaired by the substantial liquidation preference and are "potentially worthless or worth less if the Company were not sold at a valuation exceeding these liquidation preferences and preferred returns." Complaint at ¶ 51. Accordingly, this change constitutes a "sale" as defined by California law.

*Second*, Defendants rely on the "no sale" doctrine that has been ***expressly rejected*** by the Ninth Circuit. *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002). In *Falkowski*, as here, a party argued that "the grant of an employee stock option is not a sale of a security because the only thing given in return is the employee's continued employment." *Id.* The Ninth Circuit distinguished between "stock bonus plans" and "stock option plans" to hold that "whether or not an option grant is a sale in the lay sense, it is a sale under the securities laws because it is a contract to sell a security when the option is exercised. We reject the contrary holding" advanced by the cases cited by Defendants. *Id.*

This doctrine is also incompatible with California statute, which defines the term security broadly and includes "any beneficial interest or other security issued in connection with a funded employees' pension, profit sharing, stock bonus, or similar benefit plan." Cal. Corp. Code § 25019. California courts have long recognized the principle that they should "look[] through the mere form of the instruments to the facts and circumstances which surrounded their execution. It should be and is an established principle of the law that ***the substance and not the mere form of transactions*** constitutes the proper test for determining their real character. If this were not true it would be comparatively simple to circumvent by sham the provisions of statutes framed for the protection of the public. This the law does not permit." *People v. Jackson*, 24 Cal.App.2d 182, 192 (1937) (emphasis added).

Third, Defendants have the temerity to argue that their actions are functionally immune from

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG

judicial review because they unilaterally impaired Plaintiff's rights in his equity.  Mot. at 18 (stating that Plaintiff does not have standing because he "took no action to effectuate the conversion of his equity under the Merger Agreement—it converted automatically" and that this conversion occurred "***automatically* and *without any required action***" on his part) (emphasis in original).  They took substantial value for themselves from Plaintiff, misrepresented what they did, and now unpersuasively argue that Plaintiff does not have standing to challenge this because they didn't give him any choice.

G.   **Plaintiff Adequately Alleges A Cause of Action for Promissory Estoppel**

Plaintiff's fourth cause of action—for promissory estoppel—seeks to enforce Defendants' many promises, including several not already contained in express contracts between himself and Defendant Apttus.  As Defendants have previously argued, Plaintiff cannot bring a breach of contract action for many of these promises because, *inter alia*, he is not a party to these contracts.  For example, the Defendants promised that the Merger would not impair the value of Plaintiff's options in the Merger Agreement (Complaint at ¶ 46), the Option Cancellation and Conversion Agreement and RSU Cancellation and Conversion Agreement (Complaint at ¶ 47) and the email from the "Apttus Stock Administrator" (Complaint at 59).  Further, Defendant Apttus recruited Plaintiff by promising him that his compensation would include equity in the company.  Complaint at ¶ 3.

Plaintiff relied on these promises in two ways.  First by seeking, accepting and continuing his employment at Apttus.  Complaint at ¶ 3.  Second, by choosing not to engage in remedial actions that could have protected his interests.  *See, e.g.*, *West v. JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th 780, 805 (2013) (finding a detrimental reliance where plaintiff forewent potential remedial actions because of defendant's promises).  For example, if Defendants had not repeatedly promised that they would not impair the value of Plaintiff's options, then he could have negotiated for a smaller percentage of his compensation to be in such options, sought to sell or transfer his options to a third party, or timely filed a class action lawsuit challenging the Merger on the grounds that it would impair the equity that Defendants had provided to all Apttus employees.  None of these actions were possible because Defendants repeatedly misrepresented the effect of the Merger.

H.   **Plaintiff Adequately Alleges A Cause of Action for Declaratory Judgment**

Plaintiff's seventh cause of action—for declaratory judgment—should be granted and is timely,

15

even though the Merger has already been completed, because the underlying equity at issue has not yet been sold.  A declaration that Plaintiff's options entitle him to receive equity that is not subject to a substantial and increasing liquidation preference will assist in determining and addressing the damages in this case.  In California, "declaratory relief may be asked for alone or with other relief . . . whether or not other relief *is or could be* claimed at the time, and that the remedy is cumulative, that the mere fact that the contract has already been breached and a cause of action therefor (one of the traditional remedies) has accrued, does not necessarily deprive the court of the power to grant declaratory relief under the law." *Bertero v. National General Corp.*, 254 Cal.App.2d 126, 136 (1967) (emphasis in original).  Plaintiff continues to own the options; accordingly, the seventh cause of action seeks a prospective declaration as to his rights thereto.

The case Defendants rely upon for this argument, *Burris v. Cross*, is inapposite as the "overripeness" involved dueling lawsuits filed by multiple parties in multiple jurisdictions.  *Burris v. Cross*, 583 A.2d 1364, 1373 (Del. Super. Ct. 1990).  In that case, the court concluded that the action was instituted "merely for tactical or other procedural advantage" and was filed "in apparent anticipation of other pending proceedings."  *Id.*  The *Burris* case does not inform the issues before this Court.

## IV.   CONCLUSION

On the basis of the aforementioned, Defendants' Motion to Dismiss should not be decided given the lack of subject matter jurisdiction of this Court and, if it is, should be denied.


Dated: December 13, 2019                       SV EMPLOYMENT LAW FIRM PC

                                               By: ___/s/ *Julian Pardo de Zela*_____
                                                    Steven L. Friedlander
                                                    Julian Pardo de Zela
                                                    Galen P. Sallomi
                                               Attorneys for Plaintiff JEFF SANTELICES

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 4:19-cv-07414-HSG